SAMUEL G. JEWETT v. TILFOURD SCOTT AND ANOTHER.

Where the report of the commissioners of partition was objected to on the ground of inequality, and was proved to be grossly unequal, it was held that it ought to have been set aside, although there was no pretence of fraud, and no doubt the commissioners acted honestly.

Appeal from Henderson. Tried below before the Hon. John H. Reagan.

Suit in the District Court for partition of a league of land. The facts are stated in the Opinion.

*R. A. Reeves* and *Henderson & Jones*, for appellant.

*R. F. Dunn*, for appellee.

HEMPHILL, CH. J.   Samuel G. Jewett and the estate of John Brown (Red) owned jointly a league and labor of land, surveyed in two tracts on the certificate issued to John P. Lawson.   Tilfourd Scott had a claim to 160 acres in one corner of the survey, which he had purchased from John Brown (Red.)   On suit for partition, the commissioners were required by the decree to divide the larger tract into two fair and equal portions, as respects quantity and quality, in such manner as not to interfere with Scott's survey of 160 acres, and set apart the portion including Scott's survey to the estate of John Brown (Red,)—and the other portion to Samuel J. Jewett. The return of the first Commissioners was set aside, on the ground of inequality of the division.   Other Commissioners were appointed, and having reported a scheme of partition, the appellant Jewett excepted to the division as unequal and unjust; that the lands assigned to Brown's estate greatly exceeded in value those allotted to the appellant; that they were unequal in value as respected soil and water, &c., &c.

On the trial of the motion to set aside the partition, William Scott swore that he was well acquainted with the lands divided; that he had examined the land frequently, and that the lands allotted to Brown's estate were worth from fifty cents to one dollar more in value per acre than the land assigned Jewett.   Hamilton Chambers testified he was well acquainted with the lands; that those allotted Brown's estate were worth from one dollar to one dollar and fifty cents per acre more in value than the other portion of the land.   Travis Scott was well acquainted with the land; had lived upon a portion of it for eight years; had examined the lands assigned to each party.   The portion allotted Brown's estate is worth from twenty-five to fifty cents more in value in the acre than the part allotted to Jewett.   Tilfourd Scott had lived for seven years on a part of said lands.   The lands allotted Brown's estate are worth about one dollar per acre in value more than the lands allotted Jewett.

This testimony of these witnesses had reference to the larger survey. Tilfourd Scott and another witness stated that they were acquainted with .the smaller survey, and that Brown's estate had the advantage in the division of the smaller survey, from fifty to one hundred dollars.

Three of the six persons appointed as Commissioners, stated they were some three days in riding over the land and examining the same,—and that the portions to each were equal in quantity and quality, and gave their reason for making the division in the mode pursued.

The motion was refused, and the report of the Commissioners approved and confirmed.

There can be no doubt but that a party in interest has a legal right to except to the report, on the ground of inequality in the partition ; and there can be as little doubt but that the report, or finding of the Commissioners, should be set aside where there is a great weight or preponderance of evidence showing that they had committed a gross error in judgment. In this case there are four witnesses who, from a thorough acquaintance with the lands, (two of these having lived on it for seven or eight years,) testify in effect, that the lands allotted to Brown's estate exceed one or two thousand dollars in value those assigned Jewett.

Three of the Commissioners testify in support of their own action. Their testimony adds nothing to the weight of their report, except so far as it may show positively the fact of their diligence, and the reason of the mode in making the partition. They were selected for their ability and integrity. The law presumes that they acted with zeal, skill and fidelity in their trusts, and their act cannot be impeached unless for fraud, partiality or gross mistake in their judgment. There is no pretence or charge of fraud, and the question is whether there is such mistake in their decision as to operate injustice to the appellant. Upon a review of the facts, the mind is forcibly impressed with the conviction, that there must be error and

wrong in the proceeding. The Commissioners acted from inspection on their own judgment exclusively, and no doubt they acted honestly. But no witness is called who concurs in their estimate of the value respectively of the allotments. All the witnesses are of opinion that the allotments were very unequal in value, and greatly to the disadvantage of the appellant. These witnesses (some of whom had lived on the land for years) were, from their acquaintance with the lands, prepared to place a just valuation on the property.

The question of inequality was the matter in issue, and unless the report of the Commissioners is conclusive, it seems that the *prima facie* presumption of its justice was rebutted by the force of the evidence; and it should have been supported by witnesses who would have concurred, to some extent at least, with the judgments of the Commissioners. As this was not attempted, we are of opinion that there was error in the judgment, and it is ordered that the same be reversed and cause be remanded for further proceeding.

Reversed and remanded.